Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000649
28-JAN-2020
08:02 AM

NO. CAAP-16-0000649
(Consolidated with No. CAAP-16-0000676)


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


**CAAP-16-0000649**
HAWAII NATIONAL BANK, Plaintiff-Appellee,
v.
SUTAH CHIRAYUNON, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 13-1-0998)


**CAAP-16-0000676**
HAWAII NATIONAL BANK, Plaintiff-Appellee,
v.
SUTAH CHIRAYUNON, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 13-1-0998)


MEMORANDUM OPINION
(By: Fujise, Presiding Judge, Hiraoka and Wadsworth, JJ.)

Defendant-Appellant Sutah Chirayunon (**Chirayunon**) was sued by Plaintiff-Appellee **Hawaii National Bank** over a unit in what is now the Kahala Gardens condominium. Chirayunon filed two appeals from a series of orders and judgments entered by the Circuit Court of the First Circuit.[1] There are jurisdictional defects in each of Chirayunon's appeals. When an appellate court perceives a jurisdictional defect in an appeal, the court must, sua sponte, dismiss the appeal. Ciesla v. Reddish, 78 Hawai'i 18, 20, 889 P.2d 702, 704 (1995).

---

[1] The Honorable Jeannette H. Castagnetti presided.

In **CAAP-16-0000649**, Chirayunon appeals from:

1.  the order denying his motion for leave to file counterclaim and third party complaint, entered on June 30, 2014;

2.  the order granting Hawaii National Bank's motion for release of funds deposited into court, entered on April 25, 2016;

3.  the order granting Hawaii National Bank's motion to establish a rent trust fund, entered on July 29, 2016;

4.  the judgment for possession entered on September 2, 2016 (**Judgment for Possession**);

5.  the writ of possession entered on September 2, 2016 (**Writ of Possession**); and

6.  the order granting Hawaii National Bank's motion for partial summary judgment, entered on September 8, 2016.

CAAP-16-0000649 is dismissed as to the orders numbered 1, 2, 3, and 6 above, because no judgment had been entered pursuant to Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 58 (eff. 2010) when Chirayunon's notice of appeal was filed. See Jenkins v. Cades Schutte Fleming & Wright, 76 Hawaiʻi 115, 119, 869 P.2d 1334, 1338 (1994) (holding that appeal may be taken from circuit court orders only after orders have been reduced to a judgment entered pursuant to HRCP Rule 58).

We have appellate jurisdiction over CAAP-16-0000649 only over the Judgment for Possession and the Writ of Possession, under the Forgay doctrine. Ciesla, 78 Hawaiʻi at 20, 889 P.2d at 704 (recognizing appellate jurisdiction over a judgment for execution upon property, even if all claims against all parties have not been finally resolved). We hold that Chirayunon raised a genuine issue of material fact concerning his right as a Kahala Garden Apartments, Inc. shareholder to occupy his apartment. Accordingly, we vacate the Judgment for Possession and the Writ of Possession, and remand for further proceedings.

In **CAAP-16-0000676**, Chirayunon appeals from the orders numbered 1, 2, 3, and 6 above, plus the judgment entered on October 12, 2016 (**Judgment**). The Judgment contains an HRCP Rule 54(b) certification for Counts I and II of Hawaii National Bank's three-count complaint. Count I prayed for a judgment declaring that Chirayunon "has no title, right, or interest in Unit No. 9, and is occupying the property as a mere tenant whose tenancy has been terminated." Count II sought to recover possession of the premises. Count III claimed money damages based on Chirayunon's "wrongful holding over on the Premises." Count III does not assert an independent tort or state a separate cause of action; it seeks further relief under Count I pursuant to Hawaii Revised Statutes (**HRS**) § 632-3 (1993)[2] and an additional remedy for the alleged wrong pleaded in Count II. Cf. Ross v. Stouffer Hotel Co. (Hawai'i), 76 Hawai'i 454, 466, 879 P.2d 1037, 1049 (1994) (noting that a claim for punitive damages is not an independent tort, but is purely incidental to a separate cause of action). The circuit court's HRCP Rule 54(b) (eff. 2000) certification was inappropriate because Hawaii National Bank's claim for damages remains unresolved. Elliot Megdal & Assocs. v. Daio USA Corp., 87 Hawai'i 129, 135, 952 P.2d 886, 892 (App. 1998) (holding that certification of appeal pursuant to HRCP Rule 54(b) was inappropriate where circuit court retained jurisdiction to determine damages); cf. Crown Props., Inc. v. Fin. Sec. Life Ins. Co., 6 Haw. App. 105, 112, 712 P.2d 504, 509 (1985) (holding that monetary judgment against sublessee was not final or appealable because it did not fully or completely adjudicate sublessor's claims for declaration that sublease had been terminated and for issuance of writ of possession). CAAP-16-0000676 is dismissed for lack of appellate jurisdiction.

---

[2] HRS § 632-3 provides:

> Further relief based on a declaratory judgment may be granted whenever necessary or proper, after reasonable notice and hearing, against any adverse party whose rights have been adjudicated by the judgment.

## Background

The "Kahala Garden Apartments" were sixteen residential units located in the Wai'alae-Kāhala neighborhood of Honolulu, on land that was owned by the Trustees of the Estate of Bernice Pauahi Bishop (**Bishop Estate**). Kahala Garden Apartments, Inc. (the **Co-op**)[3] owned the apartments and leased the land from Bishop Estate. The Co-op subleased the apartments to its shareholders under what the parties refer to as "proprietary leases."[4] Bishop Estate's master lease on the land and the Co-op's proprietary leases on the apartments were all set to expire on July 31, 2007.

Before October 10, 2003, Marjorie B. Parker (**Parker**) was a Co-op shareholder and a lessee under one of the proprietary leases. On October 10, 2003, Parker agreed to sell her share of stock in the Co-op, and her lessee's interest in Apartment No. 9 (**Unit 9**), to Chirayunon for $95,500 pursuant to an **Agreement of Sale**. The Agreement of Sale indicated that Parker's proprietary lease for Unit 9 was to terminate on July 31, 2007.

Chirayunon claimed to have spent more than $200,000 over a three-year period on building materials, fixtures, and appliances to upgrade the interior of Unit 9. Chirayunon contends that the Co-op approved his renovation plans.

In 2007 the Co-op planned to purchase its leased land in fee simple from Bishop Estate. A report from the Co-op's board of directors dated July 9, 2007, stated:

> 1. Prior communications may have created some confusion as to whether [the Co-op's] shares will essentially have no value and that shareholders will no longer have the right to use or occupy their apartments after July 31, 2007, the date when the master lease and existing proprietary leases expire. This is true, however it will only be the case if [the Co-op] is not able to accomplish the purchase of the leased fee interest from Kamehameha Schools by that time.

---

[3] It is not clear from the record on appeal whether the Co-op was organized pursuant to HRS Chapter 421H (limited-equity housing cooperatives) or HRS Chapter 421I (cooperative housing corporations) or some other statute.

[4] The record does not contain a copy of any proprietary lease.

4

> Prior communications may have also created some confusion as to whether the shareholders have only the "opt in" or "opt out" alternatives, i.e. to either participate in the purchase of the condominium unit or to lose their share of stock. . . . However, in the event that [the Co-op] is able to purchase the leased fee interest, the Board has identified potential alternatives other than the "opt in" or "opt out" alternatives.
>
> 2.  Assuming that [the Co-op] is able to buy the fee from Kamehameha Schools, it will take some time to accomplish the condominium conversion process, so that Kahala Garden Apartments will continue to exist as a cooperative immediately after the closing of the purchase or [sic] the fee from Kamehameha Schools. Because [the Co-op's] shareholders have a right to occupy an apartment solely by reason of being shareholders,[5] the expiration of the existing proprietary leases will <u>not</u> terminate shareholders' right [sic] to occupy their apartments, but the expiration of the existing proprietary leases will create problems insofar as the leases contain many important provisions regarding the mutual obligations and privileges of [the Co-op] and its shareholders. Therefore, new proprietary leases are being prepared for execution by [the Co-op] and its shareholders. These new leases will be distributed shortly and for the most part are similar to the existing leases except for the elimination of obsolete provisions related to the master lease.

(Footnote added.) (Underscoring in original.) The record on appeal does not contain any evidence of the new proprietary leases, if they were in fact created.

On July 31, 2007, the Co-op acquired the fee simple by quitclaim deed from Bishop Estate. Hawaii National Bank loaned $5.39 million to the Co-op to finance the Co-op's purchase. The loan was secured by a mortgage on the property recorded in the Bureau of Conveyances. Chirayunon claimed to have signed a "Fee Conversion & Condominium Conversion Participation Election Form" **(Election Form)** by which he "agreed amongst other things to pay [his] share of the fee purchase transaction and loan carrying costs." He claimed to have been unable to locate his own Election Form, but had an Election Form for another unit that had apparently been signed by the shareholder-lessee of that unit on May 2, 2007.

---

[5] The record on appeal does not contain a copy of the Co-op's articles of incorporation or bylaws, or any share subscription agreement.

According to Chirayunon, after the Co-op purchased the fee it presented three options to its shareholder-lessees: (1) secure their own financing and immediately purchase their unit in fee from the Co-op, with a pro rata pay down and partial release of Hawaii National Bank's mortgage as to the purchased unit; (2) vacate the unit when the sublease term expired on July 31, 2007; or (3) pay their unit's pro rata share of the Co-op's mortgage loan carrying costs in lieu of rent, and refinance with a new first mortgage on or before August 10, 2016.[6] Chirayunon claimed to have chosen the third option (**Option 3**).[7]

On February 14, 2008, the Declaration of Condominium Property Regime for Kahala Gardens was recorded in the Bureau of Conveyances, along with the by-laws of the new condominium association. The record on appeal does not contain copies of either document, nor does the record indicate whether the Co-op was dissolved, or liquidated, or acquired by or merged into the new association of condominium unit owners.

On August 18, 2008, Parker and Chirayunon executed an "Assignment of Stock and Proprietary Lease and Satisfaction of Agreement of Sale," documenting the satisfaction of the Agreement of Sale. Exhibit "A" to that document stated that the proprietary lease for Unit 9 terminated on July 31, 2007. If the lease for Unit 9 in fact terminated on July 31, 2007, it is unclear from the record on appeal exactly what interest, if any, Parker had to assign to Chirayunon on August 18, 2008.

On July 7, 2010, the Co-op's property manager informed Chirayunon that Unit 9's share of the $5.39 million mortgage loan was $311,003, "to be paid to Hawaii National Bank directly."[8]

---

[6] It appears that the Co-op's loan from Hawaii National Bank matured on August 10, 2016.

[7] The board of directors' report dated July 9, 2007 indicated that new proprietary leases would be required after the existing proprietary subleases expired on July 31, 2007. The record does not contain a copy of a new lease executed by Chirayunon.

[8] Under the terms of Hawaii National Bank's loan commitment letter, the Co-op was to make 36 monthly payments of interest only, followed by monthly principal and interest payments based on the outstanding balance of principal. By May 26, 2010, the outstanding principal had been reduced to $711,494.00, indicating that only one other unit had not been purchased from the Co-op.

On March 22, 2011, apparently because Chirayunon had not paid $311,003 (Unit 9's share of the Co-op's $5.39 million mortgage loan) to Hawaii National Bank, the Co-op conveyed its interest in Unit 9 to Hawaii National Bank by warranty deed in lieu of foreclosure. By letter dated April 5, 2011, Hawaii National Bank informed Chirayunon:

> [The Co-op] purchased the fee interest of the property through a loan they secured through Hawaii National Bank. At that time, all the members of [the Co-op] had the option to purchase the fee interest of their subject unit or remain as a month to month tenant to [the Co-op], the new fee owner of the property. You chose not to purchase your unit, and are presently a month to month tenant of [the Co-op].
>
> Prior to [the Co-op] transferring ownership interest in your unit [to Hawaii National Bank in lieu of foreclosure], they will require you to sign a Cancellation and Termination of Lease and Agreement ("termination of lease") which you have been provided a copy. The termination of lease requires your signature for you to acknowledge that the lease is being terminated.
>
> Although we are not obligated to do so, upon the transfer of ownership of your unit, we will extend to you a six (6) month lease at a monthly lease rent of $1,600.00 per month. Prior to the expiration of the six months, you will be able to purchase your unit for THREE HUNDRED ELEVEN THOUSAND THREE AND 00/100 DOLLARS ($311,003.00), with all escrow and closing costs/expenses to be your sole responsibility. If after the six months you do not purchase the unit and/or [are] unable to secure financing to purchase the unit, we will not be obligated to extend the lease any further.

On May 11, 2011, Chirayunon and the Co-op executed a "Cancellation and Termination of Lease and Agreement" (**Proprietary Lease Cancellation Agreement**) which terminated Chirayunon's interest in the proprietary lease for Unit 9.[9] Chirayunon claimed that he executed the document under duress — he alleged that he signed the document because Hawaii National Bank had threatened to send the police to lock him and his family out of Unit 9. Chirayunon contends that the Proprietary Lease Cancellation Agreement did not terminate his rights in the property under Option 3.

Also on May 11, 2011, Hawaii National Bank and Chirayunon entered into a rental agreement for Unit 9 with an end

---

[9] If the proprietary leases had by their terms expired on July 31, 2007, it is unclear from the record why the Proprietary Lease Cancellation Agreement was necessary.

date of December 31, 2011. The rental agreement was extended to March 30, 2012, then to May 31, 2012, and finally to August 31, 2012, when the rental agreement ended.

On October 17, 2012 (after the rental agreement ended), Hawaii National Bank filed a complaint for summary possession in the District Court of the First Circuit. On March 25, 2013, the district court granted Chirayunon's motion to dismiss the complaint for lack of subject matter jurisdiction.

On April 3, 2013, Hawaii National Bank filed the circuit court complaint below, seeking declaratory relief, possession of Unit 9, and recovery of damages. On August 12, 2013, the bank moved for partial summary judgment on its claims for declaratory relief and possession of Unit 9. Chirayunon submitted a memorandum, declaration, and exhibits in opposition to the motion. The circuit court granted the motion, entered a judgment for possession, and issued a writ of possession. Chirayunon appealed. On September 23, 2014, the circuit court granted Chirayunon's motion to stay the action pending the appeal, and required him to pay $2,000 per month to the circuit court clerk, which was to be held "in a Court-supervised rent-based bond account for the pendency of [Chirayunon]'s appeal or until further order of the Court."

Chirayunon's appeal was the subject of Hawaii Nat'l Bank v. Chirayunon, No. CAAP-14-0000994, 2015 WL 6080387 (Haw. App. Oct. 15, 2015) (mem.) (**Chirayunon I**). We vacated the order granting partial summary judgment, the judgment for possession, and the writ of possession, agreeing with Chirayunon that (1) his performance improving the property took the purported Option 3 agreement out of the Statute of Frauds and (2) there were genuine issues of material fact concerning the existence of the Option 3 agreement, whether he had a legal right to occupy Unit 9, whether Hawaii National Bank made an improper threat to call the police, and whether he had no reasonable alternative but to sign the Proprietary Lease Cancellation Agreement.

On remand, Hawaii National Bank filed a motion for release of the funds Chirayunon had deposited with the circuit court clerk and a motion to establish a rent trust fund, into which Chirayunon was to pay $2,000 per month in lieu of rent. The circuit court granted both motions. Trial was set for October 3, 2016.

On June 29, 2016, Hawaii National Bank filed a second motion for partial summary judgment on Count I (declaratory relief) and Count II (possession of Unit 9) of its complaint. The bank argued that even if Chirayunon had a right under Option 3 to pay Unit 9's share of the Co-op's mortgage loan carrying costs in lieu of rent, and to later refinance with a new first mortgage on Unit 9, the stated Option 3 deadline was August 10, 2016, Chirayunon had not yet secured refinancing, and accordingly it was not material whether or not Chirayunon had signed the Proprietary Lease Cancellation Agreement under duress.

In response to Hawaii National Bank's second motion for partial summary judgment, Chirayunon filed a "Statement of Objections" that incorporated his declaration and exhibits submitted on October 28, 2013 (in opposition to Hawaii National Bank's previous motion for partial summary judgment). The circuit court entered a Judgment for Possession and issued a Writ of Possession on September 2, 2016, and entered an order granting Hawaii National Bank's motion for partial summary judgment on September 8, 2016. On September 30, 2016, Chirayunon filed the notice of appeal in CAAP-16-0000649.

On October 12, 2016, the circuit court entered the Judgment. The Judgment stated:

> This Court expressly directs that said Judgment is hereby entered as a final judgment in accordance with Rule 54(b) of the Hawaii [sic] Rules of Civil Procedure and the Hawaii [sic] Supreme Court's instructions in <u>Jenkins v. Cades, Schutte, Fleming & Wright</u>, 76 Hawaii 115, 119, [869] P.2d 1334, 1338 (1994), as there is no just reason for delay.

On October 13, 2016, Chirayunon filed the notice of appeal in CAAP-16-0000676. We consolidated the appeals at the parties' request.

## Standard of Review

The judgment for possession and writ of possession were issued pursuant to Hawaii National Bank's motion for partial summary judgment on Count I (declaratory relief) and Count II (possession of Unit 9) of the complaint. An appellate court reviews a trial court's grant of summary judgment de novo using the same standard applied by the trial court. Nozawa v. Operating Engineers Local Union No. 3, 142 Hawai'i 331, 338, 418 P.3d 1187, 1194 (2018). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Id. at 342, 418 P.3d at 1198. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. Id.

## Discussion

Chirayunon makes two arguments in his appeal from the Judgment for Possession and the Writ of Possession. Chirayunon first contends that Hawaii National Bank failed to establish the absence of genuine issues of material fact concerning "whether he [Chirayunon] had a legal right to occupy Unit 9[.]" Hawaii National Bank responds that even if Chirayunon had the right to occupy Unit 9 under Option 3, the deadline for Chirayunon to purchase Unit 9 under Option 3 was August 10, 2016, (before the trial date for the case below) and Chirayunon had not done so. The bank also argues that even if the Proprietary Lease Cancellation Agreement was invalid, it would not have created an interest for Chirayunon in Unit 9; Chirayunon at best would have been left with what he had before signing the Proprietary Lease Cancellation Agreement.

The latter argument begs the question: "What rights did Chirayunon have to occupy Unit 9?" According to Chirayunon — based on the report from the Co-op's board of directors dated July 9, 2007 — as a Co-op shareholder he has a right to occupy

his apartment solely by reason of being a shareholder, and the expiration of his proprietary lease did not terminate his right to occupy his apartment.  In response to Chirayunon's opposition, Hawaii National Bank did not introduce any evidence to establish that Chirayunon did not have the right to occupy Unit 9 by virtue of being a Co-op shareholder, as stated by the Co-op's directors' report.  Such evidence — for example, the Co-op's articles of incorporation and bylaws, any share subscription agreements executed by Chirayunon's predecessors-in-interest, the Co-op's articles of dissolution or other evidence of redemption or cancellation of the Co-op's shares, or the declaration and bylaws of the new Kahala Gardens condominium association — is not contained in the record on appeal.  We hold that Chirayunon raised a genuine issue of material fact, which should have precluded entry of summary judgment for Hawaii National Bank. The circuit court erred in entering the Judgment for Possession and issuing the Writ of Possession.

### Disposition

Based upon the foregoing, in CAAP-16-0000649, the Judgment for Possession entered by the circuit court on September 2, 2016, and the Writ of Possession entered by the circuit court on September 2, 2016, are vacated.  The remainder of Chirayunon's appeal in CAAP-16-0000649 (from the order denying his motion for leave to file counterclaim and third-party complaint, entered on June 30, 2014, the order granting Hawaii National Bank's motion for release of funds deposited into court, entered on April 25, 2016, the order granting Hawaii National Bank's motion to establish a rent trust fund, entered on July 29, 2016, and the order granting Hawaii National Bank's motion for partial summary judgment, entered on September 8, 2016) is dismissed for lack of appellate jurisdiction.

11

Chirayunon's appeal in CAAP-16-0000676 is dismissed for lack of appellate jurisdiction.

This matter is remanded to the circuit court for further proceedings.

DATED:  Honolulu, Hawaiʻi, January 28, 2020.

On the briefs:

Leroy E. Colombe,
Effie A. Steiger,
for Plaintiff-Appellee.

Gary V. Dubin,
Frederick J. Arensmeyer,
for Defendant-Appellant.

Presiding Judge

Associate Judge

Associate Judge

12